# UNITED STATES DISTRICT COURT
Western District of Kentucky
Louisville Division

Brian Butler                             )
     *Plaintiff*                        )
                                      )
v.                                       )     Case No.   3:21-cv-299-DJH
                                      )
Abound Federal Credit Union              )
     *Defendant*                        )
Serve:                                   )
     Abound Federal Credit Union        )
     3939 South Dixie Boulevard         )
     Radcliff, KY 40160                 )
                                      )
Equifax Information Services, LLC         )
     *Defendant*                        )
Serve:                                   )
     Corporation Service Company        )
     421 West Main Street               )
     Frankfort, KY 40601                )
                                      )
Sheffield Financial, LLC                  )
     *Defendant*                        )
Serve:                                   )
     CT Corporation System             )
     150 Fayetteville Street, # 1011   )
     Raleigh, NC 27601                 )
                                      )
The Bank of Missouri                      )
     *Defendant*                        )
Serve:                                   )
     The Bank of Missouri               )
     916 North Kings Highway            )
     Perryville, MO 63775               )
                                      )
Trans Union, LLC                          )
     *Defendant*                        )
Serve:                                   )
     The Prentice Hall Corp. System    )
     421 West Main Street               )
     Frankfort, KY 40601                )
    _____)

## VERIFIED COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.      This is a complaint for Defendants' separate violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and for interrelated state-law claims for Defendant Abound Federal Credit Union's violations of the Kentucky Consumer Protection Act, KRS 367.110 *et seq.* ("KCPA") and Kentucky's Uniform Commercial Code ("UCC").

### JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the FCRA 15 U.S.C. §§ 1681n and 1681o. Mr. Butler asks the Court to take supplemental jurisdiction over his interrelated state-law claims under 28 U.S.C. § 1367. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Breckinridge County, Kentucky, which is located within this District.

### PARTIES

3.      Plaintiff Brian Butler is a natural person who resides in Breckinridge County, Kentucky, a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c), and a "person" within the meaning of the Kentucky Consumer Protection Act ("KCPA").

4.      Defendant Abound Federal Credit Union ("Abound") is a federal credit union regulated by the National Credit Union Administration. Abound's principal place of business is located at 3939 South Dixie Boulevard, Radcliff, KY 40160. Abound is a "furnisher of credit information" within the meaning of the FCRA and is a "person" within the meaning of the KCPA.

5.      Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company registered with the Kentucky Secretary of State whose principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

6.      Sheffield Financial, LLC ("Sheffield") is a foreign limited liability company that has not registered to conduct business in the Commonwealth of Kentucky. Sheffield's principal place of business is located at 160 Mine Lake Court, Suite 200, Raleigh, NC 27615. Sheffield is a "furnisher" of credit information within the meaning of the FCRA.

7.      The Bank of Missouri ("TBOM") is a state-chartered bank regulated by the Federal Deposit Insurance Corporation. TBOM's principal place of business is located at 916 North Kings

Highway, Perryville, MO 63775. TBOM is a "furnisher" of credit information within the meaning of the FCRA.

8.      Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company registered with the Kentucky Secretary of State whose principal place of business is located at 555 West Adams, Chicago, IL 60661. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

## STATEMENT OF FACTS

### I.      Facts as to Abound Federal Credit Union

9.      In April 2016, Plaintiff Brian Butler ("Butler") purchased a used 2006 Hummer 3 (the "Hummer") from a private individual. Defendant Abound Federal Credit Union ("Abound") financed the vehicle purchase by extending a loan to Mr. Butler (the "Abound Loan").

10.      Mr. Butler used the Hummer financed by the Abound Loan for personal, family, and/or household purposes.

11.      The sale and financing of the Hummer constitutes "trade" or "commerce" within the meaning of the FCRA and KCPA.

12.      Mr. Butler suffered an economic setback and missed his loan payments to Abound in February and March 2017.

13.      Abound repossessed the Hummer and subsequently sold the vehicle at auction in April 2017.

14.      Repossession was a remedy that Abound could pursue as a secured creditor. But it could have just as easily allowed Mr. Butler to keep the Hummer and collect the unpaid balance of the loan from him.

15.      Repossession and sale of secured collateral in a consumer transaction like the one at issue here places a duty of care on the secured party to safeguard the repossessed property and to dispose of it in a commercially reasonable manner. These duties and requirements are set forth in Kentucky's Uniform Commercial Code, KRS 355.9-101 *et seq*. In particular, every aspect of the sale of the secured property has to be done in a commercially reasonable manner before a secured creditor may obtain a deficiency judgment against the consumer.

16.      Abound is reporting negative credit information about Mr. Butler and the Abound Loan (the "Abound Tradeline") to the three major credit reporting agencies ("CRA's")—

Defendant Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); and Defendant Trans Union, LLC ("Trans Union").

17.     Upon review of his credit reports, Mr. Butler found conflicting and confusing information as to the payment history and status of the Abound Tradeline.

18.     Abound furnishes credit information about consumers such as Mr. Butler to the CRA's as part of its normal course of business.

19.     Abound's reporting of credit information to collect a debt constitutes "trade" or "commerce" within the meaning of the KCPA. *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 792 (W.D. Ky. 2003).

20.     As of July 1, 2020, Trans Union and Equifax were each reporting the Abound Tradeline with a status of "repossession" with payments being made through January 2018 and then 30 days late in February and March 2018, 60 days late in April 2018, and 90 days late in May 2018. The July 1, 2020 Abound Tradeline on Mr. Butler's Trans Union credit report first notes a repossession in June 2018, which is about 15 months *after* Abound repossessed the Hummer.

21.     As of July 1, 2020, Experian was reporting the Abound Tradeline with a status of "repossession. $8,102 past due as of May 2020," with payments being made through January 2017, 30 days late as February 2017, 60 days late in March and April 2017, and 90 days late in May 2017, and first notes a repossession in June 2017.

22.     Mr. Butler did not and does not believe that the credit information and the alleged amount owed after repossession furnished by Abound in the Abound Tradeline are correct.

23.     Based on the credit information in the Abound Tradeline appearing on Mr. Butler's credit reports, it does not appear that Abound disposed of the vehicle at issue in a commercially reasonable manner as required by law after repossessing it.

24.     To gather more information about the Abound Tradeline, Mr. Butler sent a dispute letter directly to Abound on December 14, 2020. In the December 14, 2020 letter, Mr. Butler directly disputed the accuracy of the Abound Tradeline. In the letter, Mr. Butler also exercised his statutory rights under KRS 355.9-616 to request an "explanation" of Abound's calculation of any deficiency owed after post-repossession disposition of the vehicle at issue. Mr. Butler also exercised his right under KRS 355.9-210 for "request for an accounting." Both statutes require a creditor to respond to a request for an explanation within fourteen (14) days of receipt of the requests.

25.     On January 6, 2021, Abound sent Mr. Butler a response to his December 14, 2020 letter.

26.     In its January 6, 2021 letter, Abound included a copy of a letter dated January 6, 2021 titled "Notice of Our Plan to Sell Property" and another letter dated January 6, 2021 titled "Notification of Sale/Deficiency Balance." A true and accurate copy of Abound's January 6, 2021 response and attachments is attached as Exhibit "A."

27.     Abound's Notice of Our Plan to Sell Property stated that it intended to sell the Hummer at a "private sale sometime after 25th April 2017."

28.     Abound's Notification of Sale/Deficiency Balance stated in relevant part:

In accordance with the Uniform Commercial Code, the above referenced collateral has been sold.  We have applied the proceeds of this sale in the manner set forth below:

| | |
|---|---|
| Payoff Balance Before Sale: | 16,733.28 |
| Less Sale Price of Collateral: | 3,200.00 |
| Net Balance Before Expenses: | 13,533.28 |
| Plus Expense Related to Repossession and Collection: | 797.25 |
| Less Credits: (   ) | |
| **Deficiency Balance Owed:** | 14,330.53 |

29.     In its January 6, 2021 response to Mr. Butler, Abound violated its statutory obligation to Mr. Butler to provide an accounting in connection with his request for an accounting. Rather than provide the accounting, Abound unlawfully stated that Mr. Butler had to pay Abound for the accounting:

Per our rate and fee schedule, a fee of $3.00 is assessed for each printed copy of a statement requested.  If you would still like to receive statement copies, please feel free to reach me at 877-799-1455. If you have set up access to Online Banking, statements are available at no cost.

30.     On April 23, 2021, undersigned counsel requested, obtained, and reviewed a Carfax report for the Hummer.

31.     The Hummer Carfax report noted that the Hummer was sold at an "auto auction: On May 29, 2017 then sold again at an auto action on October 2, 2017; October 5, 2017; October 24, 2017; December 13, 2017; February 26, 2018, and September 17, 2018.

32.     The May 29, 2017 "auto auction" was open to the public and was not a "private sale" as represented by Abound in its Notice of Our Plan to Sell Property.

33.     On April 22, 2021, counsel requested, obtained, and reviewed a NADA historical pricing for the Hummer as of April 2017, which is the month that Abound repossessed the Hummer.

34.     The historical NADA report noted that the "rough trade-in" value of the Hummer was $8,375 in April 2017 and the "clean retail" value of the Hummer was $13,850.

35.     But according to Abound's Notification of Sale/Deficiency, Abound only received a net amount of $2,402.75 from the repossession sale of the Hummer. This gross discrepancy in value and amount received at auction demonstrates that Abound did not dispose of the Hummer in a commercially reasonable manner.

36.     Under Kentucky law, in order to recover or claim due a deficiency on the sale of secured property, the secured party must dispose of the secured property in a commercially reasonable manner. Further, as the secured party claiming a deficiency due, Abound has the burden of demonstrating its disposition of the vehicle at issue was commercially reasonable.

37.     Because Abound has the burden of proving that the sale of the vehicle at issue was conducted in a commercially reasonable in order to claim (or report) the right to recover a deficiency balance from Mr. Butler, Abound has no present right to recover a deficiency from Mr. Butler or the right to report that a deficiency is due and owing. In other words, Abound lacks the legal "ability to unilaterally impose statutory [deficiency balance due] without judicial oversight." *Fulk v. LVNV Funding LLC,* 55 F. Supp. 3d 967, 973 (E.D. Ky. 2014).

38.     On July 17, 2020, Mr. Butler sent dispute letters to the CRA's disputing the false and inaccurate credit information on his credit reports, including the Abound Tradeline.

39.     Receipt of Mr. Butler's July 17, 2020 dispute letters triggered the CRAs' (including Trans Union's) duty under 15 U.S.C. § 1681i(a) to send prompt notice of Mr. Butler's disputes to Abound and to conduct their own reasonable investigation of Mr. Butler's disputes and to send Mr. Butler prompt notice of the results of their investigations of Mr. Butler's disputes. Trans Union did not respond to Mr. Butler's July 17, 2020 dispute.

40.     Equifax and Experian complied with their statutory duty and sent Abound copies of Mr. Butler's dispute. Trans Union did not send Abound a copy of Mr. Butler's dispute.

41.     The investigative results from Equifax and Experian show that Abound failed to conduct a reasonable investigation of Mr. Butler's disputes. After investigating the dispute, the Abound Tradeline continued to include confusing and contradictory payment histories across his three credit reports. Further, the Abound Tradeline continued to report a positive deficiency

balance due despite Abound's failure to dispose of the Hummer in a commercially reasonable manner.

42.     Trans Union failed to meet its statutory obligations under the FCRA. Trans Union failed (i) to send copies of Mr. Butler's dispute to the furnishers of the disputed information in the dispute letters, including Abound; (ii) to conduct any investigation of Mr. Butler's disputes; and (iii) to send Mr. Butler timely notice of the results of his disputes.

43.     Abound did not conduct a reasonable investigation of Mr. Butler's disputes after receiving notice of the disputes from Experian and Trans Union. Abound failed to correct the incorrect and conflicting payment histories and dates of first delinquency ("DOFD's") across Mr. Butler's credit report. Abound failed to reduce the balance due to $0.00 based on its failure to dispose of the Hummer in a commercially reasonable manner. Further, in its dispute results it sent to the CRA's, Abound failed to note that Mr. Butler had directly disputed the credit information set forth in the Abound Tradeline.

44.     Abound violated the FCRA by failing to conduct a reasonable investigation of Mr. Butler's disputes.

45.     Abound violated the KCPA by (i) failing to respond to Mr. Butler's request for an accounting under KRS 355.9-210, (ii) claiming a deficiency balance due on a vehicle that it did not dispose of in a commercially reasonable manner, and (iii) publishing false and defamatory credit information about Mr. Butler before and after receiving Mr. Butler's dispute letters from the CRA's.

46.     Trans Union violated the FCRA by (i) failing to meet its fundamental statutory duties of investigating Mr. Butler's disputes, (ii) Failing to forward copies of Mr. Butler's disputes to the furnishers of credit information set forth in the dispute letters, including but not limited to Abound, and (iii) failing to send Mr. Butler the results of its investigation.

## II.     Facts as to Sheffield Financial, LLC

47.     In March 2015, Mr. Butler took out a personal loan from Defendant Sheffield Financial, LLC ("Sheffield") (the "Sheffield Loan").

48.     Mr. Butler used the proceeds from the Sheffield Loan solely for personal, family, and/or household purposes.

49.     The making of the Sheffield Loan constitutes "trade" or "commerce" within the meaning of the KCPA.

50.    Mr. Butler's financial setback also caused him to default on the Sheffield Loan.

51.    After the Sheffield Loan fell into default, Mr. Sheffield paid off the Sheffield Loan.

52.    Upon review of his July 1, 2020 credit reports published by the CRA's, Mr. Butler discovered false and contradictory credit information concerning the Sheffield Loan (the "Sheffield Tradeline").

53.    Equifax was reporting the Sheffield Tradeline with an account status of "charge off" and a $0.00 balance due. Also, Equifax was reporting a date of first delinquency ("DOFD") of March 2017.

54.    Experian was reporting the Sheffield Tradeline with a status of "paid in settlement. $6,897 written off." Also, Experian was reporting a DOFD of January 2017.

55.    Trans Union was reporting the Sheffield Tradeline as a tradeline furnished by Branch Banking & Trust Company ("BB&T") (the "BB&T Tradeline"). BB&T acquired Sheffield in August 1997. But Mr. Butler's credit reports fail to show any connection between the two entities. Consequently, reporting a Sheffield Tradeline on some of his credit reports and a BB&T Tradeline on other credit reports creates the false and inaccurate impression that the two tradelines represent two different debts and not the same debt.

56.    Trans Union was reporting conflicting and contradictory information about the BB&T Tradeline. Trans Union was reporting the pay status of the tradeline as "account paid in full; was a charge off" but the tradeline remarks noted "settled less than full blnc; paid in full/was a charge off." Also, Trans Union was reporting a DOFD of February 2017.

57.    On July 17, 2020, Mr. Butler sent dispute letters to the CRA's disputing false and inaccurate credit information on his credit reports, including the Sheffield Tradeline and BB&T Tradeline.

58.    Receipt of Mr. Butler's July 17, 2020 dispute letters triggered the CRAs' (including Trans Union's) duty under 15 U.S.C. § 1681i(a) to send prompt notice of Mr. Butler's disputes to Sheffield and/or BB&T and to conduct their own reasonable investigation of Mr. Butler's disputes and to send Mr. Butler prompt notice of the results of their investigations of Mr. Butler's disputes. Trans Union did not respond to Mr. Butler's July 17, 2020 dispute.

59.    Equifax and Experian complied with their statutory duty and sent Sheffield copies of Mr. Butler's dispute. Trans Union did not send Sheffield or BB&T a copy of Mr. Butler's dispute.

60.     On September 22, 2020, Mr. Butler sent dispute letters directly to both Sheffield and BB&T.

61.     Mr. Butler's September 22, 2020 letters specifically and expressly disputed the conflicting, confusing, and inaccurate credit information appearing in the Sheffield Tradeline and BB&T Tradeline across his three credit reports.

62.     The investigative results of his disputes from Equifax and Experian did not correct the inaccurate credit information in the Sheffield Tradeline and BB&T Tradeline as reported on his credit reports by the CRA's.

63.     On January 21, 2021, Mr. Butler sent another round of dispute letters to the CRA's. Mr. Butler's January 21, 2021 dispute letter included a dispute of the Sheffield Tradeline and BB&T Tradeline.

64.     The investigative results from Equifax and Experian show that Sheffield failed to conduct a reasonable investigation of Mr. Butler's disputes. After investigating the dispute, the Sheffield Tradeline continued to include contradictory DOFD's across his three credit reports. Further, Experian continued to report the status of the Sheffield Tradeline as "paid in settlement. $6,765 written off." Equifax continued to falsely and inaccurately report the account status of the Sheffield tradeline as "charge off."

65.     While Trans Union did not respond to any of Mr. Butler's dispute letters, Mr. Butler was able to obtain a copy of his Trans Union credit report from www.annualcreditreport.com dated March 17, 2021. Neither Mr. Butler's post-dispute Equifax credit report nor his annual Trans Union credit report noted that Mr. Butler had directly disputed the Sheffield Tradeline or BB&T Tradeline. Finally, the contradictory and internally inconsistently different DOFD's for the Sheffield Tradeline and BB&T Tradeline continued to be reported across Mr. Butler's three credit reports.

66.     Trans Union failed to meet its statutory obligations under the FCRA. Trans Union (i) failed to send copies of Mr. Butler's dispute to the furnishers of the disputed information in the dispute letters, including Sheffield; (ii) failed to conduct any investigation of Mr. Butler's disputes; and (iii) failed to send Mr. Butler timely notice of the results of his disputes.

67.     Sheffield violated the FCRA by failing to conduct a reasonable of Mr. Butler's disputes. Sheffield failed to correct the incorrect statuses and the conflicting and contradictory DOFDs of the Sheffield Tradeline or BB&T Tradeline being reported by the CRA's. Further, Sheffield failed to note that Mr. Butler had directly disputed the Sheffield Tradeline and BB&T Tradeline with Sheffield and BB&T. Finally, Sheffield continued to report the underlying credit

information as a Sheffield Tradeline on Mr. Butler's Equifax and Experian and as a BB&T Tradeline on Mr. Butler's Trans Union credit report.

68.    Trans Union violated the FCRA by (i) failing to meet its fundamental statutory duties of investigating Mr. Butler's disputes, (ii) failing to forward copies of Mr. Butler's disputes to the furnishers of credit information set forth in the dispute letters, including but not limited to Abound, (iii) failing to send Mr. Butler the results of its investigation, and (iv) failing to note that Mr. Butler had disputed the BB&T Tradeline.

69.    Equifax violated the FCRA by failing to correct the account status of the Sheffield Tradeline. After investigating Mr. Butler's disputes, Equifax continued to inaccurately report the account status of the Sheffield Tradeline as "charge off." Instead, Equifax should have reported the account status as something like: "paid in full, was a charge off." Further, after conducting its investigation of Mr. Butler's disputes, Equifax failed to note that Mr. Butler had directly disputed the Sheffield Tradeline with Sheffield.

## III.    Facts as to The Bank of Missouri

70.    Mr. Butler opened a credit card with Defendant The Bank of Missouri ("TBOM") and made timely payments on the account to TBOM.

71.    Upon review of his credit reports, Mr. Butler discovered that TBOM was furnishing credit information to the CRA's concerning the TBOM account (the "TBOM Tradeline") which erroneously and inaccurately reported to the CRA's that he was 30 days late in making a payment on the TBOM account in March 2019.

72.    On July 17, 2020 and again on January 21, 2021, Mr. Butler sent dispute letters to the CRA's that included a dispute of the TBOM Tradeline.

73.    To date, Trans Union has not sent any responses to Mr. Butler's disputes.

74.    On September 22, 2020 and again on November 17, 2020, Mr. Butler sent disputes directly to TBOM that included a dispute of the payment history of the TBOM Tradeline.

75.    Receipt of Mr. Butler's July 17, 2020 and January 21, 2021 dispute letters triggered the CRAs' (including Trans Union's) duty under 15 U.S.C. § 1681i(a) to send prompt notice of Mr. Butler's disputes to TBOM and to conduct their own reasonable investigation of Mr. Butler's disputes and to send Mr. Butler prompt notice of the results of their investigations of Mr. Butler's disputes.

76.    Equifax and Experian complied with their statutory duty and sent TBOM copies of

Mr. Butler's disputes. Trans Union did not send TBOM a copy of Mr. Butler's dispute.

77.     Equifax and Experian sent Mr. Butler the results of their investigations of Mr. Butler's disputes. Trans Union did not send Mr. Butler notice of the results of its investigation of Mr. Butler's disputes.

78.     TBOM did not conduct a reasonable investigation of Mr. Butler's disputes. After investigating Mr. Butler's disputes, TBOM continued to falsely furnish a false and inaccurate payment history for Mr. Butler's TBOM credit report. That is, the TBOM Tradeline continued to falsely and inaccurately report that Mr. Butler 30 days late in payment in March 2019. Further, the TBOM Tradeline post-dispute failed to note that Mr. Butler had directly disputed the TBOM Tradeline with TBOM.

79.     Trans Union violated the FCRA by failing (i) to meet its fundamental statutory duties of investigating Mr. Butler's disputes, (ii) forwarding copies of Mr. Butler's disputes to the furnishers of credit information set forth in the dispute letters, including but not limited to TBOM, (iii) sending Mr. Butler the results of its investigation, and (iv) failing to note that Mr. Butler had disputed the TBOM Tradeline.

80.     Equifax violated the FCRA by failing to note that Mr. Butler had directly disputed the TBOM Tradeline.

## CLAIMS FOR RELIEF

### I.    Claims against Abound Federal Credit Union

#### A.    Violations of the FCRA

81.     The foregoing acts and omissions of Defendant Abound Federal Credit Union ("Abound") violate the FCRA.

82.     After being informed by one or more CRA's that Mr. Butler disputed the accuracy of the information it was furnishing to the CRA's concerning Mr. Butler and the vehicle-deficiency debt underlying the Abound Tradeline, Abound willfully failed to conduct a proper investigation of Mr. Butler's dispute, filed with the CRA's, that Abound was furnishing false negative credit information about Mr. Butler and the vehicle deficiency debt.

83.     Abound willfully failed to review all relevant information purportedly provided by one or more of the CRA's to Abound in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

84.     Abound willfully failed to direct the one or more CRA's to delete inaccurate information about Mr. Butler pertaining to the Abound loan underlying the Abound Tradeline and Abound failed to note that Mr. Butler had disputed the credit information in the Abound Tradeline as required by 15 U.S.C. § 1681s-2(b)(C).

85.     Mr. Butler has a private right of action to assert claims against Abound arising under 15 U.S.C. § 1681s-2(b).

86.     Abound is liable to Mr. Butler for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

87.     In the alternative, Abound is liable to Mr. Butler for the actual damages he has sustained as result of its negligent violations of the FCRA in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

**B.     Violations of the KCPA**

88.     The foregoing acts and omissions of Defendant Abound Federal Credit Union ("Abound") violate the KCPA.

89.     The transaction that resulted in the Abound Loan at issue constituted conduct of "trade" and "commerce" within the meaning of the KCPA.

90.     Mr. Butler used the 2006 Hummer 3 exclusively for personal, family, and/or household purposes.

91.     Claiming a deficiency due on a vehicle that Abound failed to dispose of in a commercially reasonable manner after repossession is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

92.     Deliberately and intentionally denying Mr. Butler his statutory right to an accounting of the payment history of the Abound loan is an unfair, false, misleading, or deceptive act or practice in the conduct of any trade or commerce that is unlawful under KRS 367.170.

93.     Mr. Butler is a natural person within the meaning of the KCPA.

94.     Mr. Butler suffered real and ascertainable losses from Abound's violations of the KCPA, including but not limited to damages the Mr. Butler's credit, credit score, and ability to

obtain new credit and financing.

95.     Mr. Butler has a claim against Abound under KRS 367.220, which gives him the right to recover his ascertainable damages, plus his costs, plus reasonable attorney's fees to be determined by the Court, and punitive damages.

C.      **Violation of Article 9 of Kentucky's UCC**

96.     The foregoing acts and omissions of Defendant Abound Federal Credit Union ("Abound") constitute violations of Article 9 of Kentucky's UCC.

97.     Mr. Butler exercised his statutory right under KRS 355.9-210 by sending a written request to Abound for an accounting of debits and credits to Abound under the Abound loan.

98.     Abound received Mr. Butler's written request. Abound intentionally and deliberately denied Mr. Butler his right to receive an accounting. Instead, contrary to the plain dictates of the statute, Abound tried to get Mr. Butler to pay for the accounting.

99.     Under KRS § 355.9-625(5)(f), Mr. Butler is entitled to recover damages of $500 from Abound.

II.     **Claims against Sheffield Financial, LLC**

100.    The foregoing acts and omissions of Defendant Sheffield Financial, LLC ("Sheffield") violate the FCRA.

101.    After being informed by one or more CRA's that Mr. Butler disputed the accuracy of the information it was furnishing to the CRA's concerning Mr. Butler and the personal loan underlying the Sheffield Tradeline and/or the BB&T Tradeline, Sheffield willfully failed to conduct a proper investigation of Mr. Butler's dispute, filed with the CRA's, that Sheffield was furnishing false negative credit information about Mr. Butler and the conflicting and contradictory statuses and DOFD's for the Sheffield Tradeline and/or the BB&T Tradeline appearing on Mr. Butler's credit reports published by the CRA's.

102.    Sheffield willfully failed to review all relevant information purportedly provided by one or more of the CRA's to Sheffield in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

103.    Sheffield willfully failed to direct the one or more CRA's to delete inaccurate information about Mr. Butler to correct the incorrect and conflicting statuses and DOFD's of the Sheffield Tradeline and/or the BB&T Tradeline being reported by the CRA's and failed to note

that Mr. Butler had disputed the credit information in the Sheffield Tradeline and/or BB&T Tradeline as required by 15 U.S.C. § 1681s-2(b)(C). Further, Sheffield continued to report the credit information about Mr. Butler as a Sheffield Tradeline to Equifax and Experian and as a BB&T Tradeline to Trans Union.

104.    Mr. Butler has a private right of action to assert claims against Sheffield arising under 15 U.S.C. § 1681s-2(b).

105.    Sheffield is liable to Mr. Butler for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

106.    In the alternative, Sheffield is liable to Mr. Butler for the actual damages he has sustained as result of its negligent violations of the FCRA in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

### III.    Claims against The Bank of Missouri

107.    The foregoing acts and omissions of Defendant The Bank of Missouri ("TBOM") violate the FCRA.

108.    After being informed by one or more CRA's that Mr. Butler disputed the accuracy of the information it was furnishing to the CRA's concerning Mr. Butler and the payment history for the credit card account underlying the TBOM Tradeline, TBOM willfully failed to conduct a proper investigation of Mr. Butler's dispute, filed with the CRA's, that TBOM was furnishing false negative credit information about Mr. Butler and the payment history appearing in the TBOM Tradeline.

109.    TBOM willfully failed to review all relevant information purportedly provided by one or more of the CRA's to TBOM in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

110.    TBOM willfully failed to direct the one or more CRA's to delete inaccurate information about Mr. Butler to correct the 30-day late payment for March 2019 set forth in the TBOM Tradeline being reported by the CRA's and failed to note that Mr. Butler had disputed the credit information in the TBOM Tradeline as required by 15 U.S.C. § 1681s-2(b)(C).

111.    Mr. Butler has a private right of action to assert claims against TBOM arising under 15 U.S.C. § 1681s-2(b).

112.   TBOM is liable to Mr. Butler for the actual damages he has sustained by reason of its willful violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages, whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, all pursuant to 15 U.S.C. § 1681n.

113.   In the alternative, TBOM is liable to Mr. Butler for the actual damages he has sustained as result of its negligent violation of the FCRA in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o.

## IV.   Claims against Equifax Information Services, LLC

114.   The foregoing acts and omissions of Defendant Equifax Information Services, LLC ("Equifax") constitute violations of the FCRA.

## A.   Violation of 15 U.S.C. § 1681i(1)

115.   Equifax violated 15 U.S.C. § 1681i(1) by failing to conduct a reasonable investigation of Mr. Butler's disputes concerning the Sheffield Tradeline.

116.   As a result of Equifax's failure to conduct a reasonable investigation of Mr. Butler's disputes, Equifax continued to inaccurately report that the account status the Sheffield Tradeline as a "charge off" instead of "paid was a charge off" or something similar. Mr. Butler suffered actual damages in the form of a lowered credit score and denial of credit. Mr. Butler also suffered frustration, irritation, and emotional upset and distress.

117.   Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

118.   In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### B.   Violation of Duty to Include of Notice of Dispute

119.   Equifax's failure to note that Mr. Butler had disputed the Abound, Sheffield, and TBOM Tradelines rendered the information on Mr. Butler's credit reports that Equifax published to third-party users "incomplete and inaccurate."

120.   As a result of Equifax's failure to note that Mr. Butler had disputed the Abound,

Sheffield, and TBOM Tradelines in the credit reports it published to third-party users, Mr. Butler suffered actual damages in the form of a lowered credit score and denial of credit. He also suffered frustration, irritation, and emotional upset and distress.

121.    Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

122.    In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## V.    Claims against Trans Union, LLC

123.    The foregoing acts and omissions of Defendant Trans Union, LLC ("Trans Union") violated the FCRA.

### A.    Violation of 15 U.S.C. § 1681i

124.    Trans Union violated 15 U.S.C. § 1681i by **(i)** failing to conduct any investigation of Mr. Butler's disputes; **(ii)** failing to send notice of Mr. Butler's disputes to any of the furnishers of credit information included in Mr. Butler's disputes; and **(iii)** failing to send Mr. Butler notice of the results of Trans Union's investigation into of his disputes.

125.    Consequently, Trans Union deprived Mr. Butler of his necessary and crucial statutory right to dispute and correct false and harmful credit information on his credit report. In essence, Trans Union's failure to adhere to its statutory duties left Mr. Butler with no remedies against those who are defaming him and ruining his credit.

126.    Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

127.    In the alternative, Trans Union's conduct, actions and inactions were grossly negligent or negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### B.    Violation of Duty to Include of Notice of Dispute

128.    Trans Union failure to note that Mr. Butler had disputed the Abound, Sheffield, and TBOM Tradelines rendered the information on Mr. Butler's credit reports that Trans Union

published to third-party users "incomplete and inaccurate."

129.    As a result of Trans Union's failure to note that Mr. Butler had disputed the Abound, Sheffield, and TBOM Tradelines in the credit reports it published to third-party users, Mr. Butler suffered actual damages in the form of a lowered credit score and denial of credit. He also suffered frustration, irritation, and emotional upset and distress.

130.    Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

131.    In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Brian Butler requests that the Court grant him the following relief:

1.    Award Plaintiff the maximum amount of statutory damages pursuant to 15 U.S.C. §1681n against each Defendant for each Defendant's willful violations of the FCRA;

2.    Award Plaintiff $500.00 in statutory damages pursuant to KRS 355.9-625(5)(f) against Abound for Abound's violation of KRS 355.9-210;

3.    Award Plaintiff actual damages against each Defendant pursuant to 15 U.S.C. §1681n or §1681o for each Defendant's violations of the FCRA;

4.    Award Plaintiff actual damages against Abound pursuant to KRS 367.220 for Abound's violations of the KCPA;

5.    Award Plaintiff punitive damages against each Defendant pursuant to 15 U.S.C. §1681n for each Defendant's willful violations of the FCRA;

6.    Award Plaintiff punitive damages against Abound pursuant to KRS 367.220 for Abound's violations of the KCPA;

7.    Award Plaintiff attorney's fees, litigation expenses and costs;

8.    A trial by jury; and

9.      Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James H. Lawson
James H. Lawson
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:    (502) 473-6525
Fax:    (502) 473-6561
E-mail: james@kyconsumerlaw.com

## VERIFICATION

Plaintiff Brian Butler declares as follows:

1.      I am the Plaintiff if the present case.

2.      I reside in Hardin County, KY.

3.      I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called upon to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4.      I verify and affirm under the penalty of perjury under the laws of the United States of America and the Commonwealth of Kentucky that the factual averments in this Verified Complaint concerning myself and my activities are true and correct. 28 U.S.C. § 1746.

Executed on ___May 11,_____, 2021.

Printed Name   _Brian Keith Butler Jr_

Signature   _Brian K. Butler_